LA JET, INC., Appellant,

v.

UNITED PETROLEUM DISTRIBUTORS, INC., Appellee.

No. 17148.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 3, 1978.

**194**

Fulbright & Jaworski, Russell H. McMains, Houston, for appellant.

Woodard, Hall & Primm, Bruce S. Powers, Houston, for appellee.

PEDEN, Justice.

La Jet, Incorporated, appeals from the overruling of its plea of privilege to be sued in Taylor County in an action for breach of contract filed by United Petroleum Distributors, Incorporated (UPI). UPI's controverting plea asserted Subdivision 23 of Article 1995, Vernon's Texas Civil Statutes, the exception for suits against a corporation. La Jet's points of error question whether the evidence was legally and factually sufficient to establish a cause of action against La Jet for breach of the contract sued upon and whether the evidence was legally sufficient to show that UPI sustained legal injury. We affirm.

La Jet admitted that the written contract sued upon was executed by the parties on April 16, 1973, in Harris County, that La Jet maintains a regular place of business in Harris County and has a representative in Harris County who transacts business on its behalf. The contract is one for the purchase and sale of 750 to 1500 barrels of fuel oil per day. Section 11 provided that delivery was to begin 15 days after completion of the construction of a storage tank by UPI at La Jet's facility in Louisiana; La Jet was to give written notice as to when to start construction and was to pay for it.

The contract was to continue until March 1, 1976, and thereafter from month to month until either party gave 30 days notice of cancellation. La Jet sent a notice of cancellation on November 12, 1973.

Appellee alleged in its first original petition that appellant refused to make any further deliveries after November 12, 1973, and at that time appellee "had performed its obligations in all material respects and all conditions precedent to the Defendant's obligation to perform had occurred."

Subdivision 23 provides:

"Corporations and Associations—Suits against a private corporation, association, or joint stock company may be brought . . . in the county in which the cause of action or part thereof arose; or in the county in which the plaintiff resided at the time the cause of action or part thereof arose, provided such corporation, association or company has an agency or representative in such county . . . ."

Appellant's answer was only a general denial. The president of the plaintiff corporation was the only witness who testified.

■ Appellee could maintain venue in Harris County under Subd. 23 by showing 1) that its cause of action or a part thereof arose in Harris County or 2) that it resided in Harris County at the time the cause of action or part thereof arose and appellant had an agency or representative in Harris County. Under both of these theories, however, appellee has the burden of establishing by a preponderance of the evidence that it has a cause of action against appellant. *Texas High School Gymnastics Coaches Assoc. v. Andrews,* 532 S.W.2d 142, 145 (Tex. Civ.App.1975, writ dism.); 1 McDonald, Texas Civil Practice 518, 523, §§ 4.30.2, 4.30.3 (1965). Appellant states that the only question presented by this appeal is whether appellee proved that it had a cause of action based on the contract attached to its petition. That contract was admitted in evidence as exhibit P–1; it is five pages long.

Appellant's first two points assert that there was no evidence or insufficient evidence that appellee had a cause of action

against appellant under the contract attached to its petition, contending that the contract was not performed or performable since it was not to begin until after completion of a storage tank provided for in Section 11 of the contract. Section 11 stated that appellee would commence construction of a storage tank on appellant's premises within 15 days after appellant requested it to. Appellant was to pay for it. Appellee's president, Edward Fourticq, testified on cross-examination that construction of this storage tank had never begun because appellant would not permit it. The trial judge sustained an objection by appellee's attorney to this line of questioning on the ground that appellee had specifically pleaded that all conditions precedent to the contract had been performed and that appellant's general denial would not place this contention in issue. Appellee relied on Rule 54 of the Texas Rules of Civil Procedure. It provides:

"In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party."

A condition precedent may be a condition to the formation of a contract, i. e., an agreement that a contract shall not become effective unless some specified condition is performed or occurs. *Perry v. Little,* 377 S.W.2d 765, 769 (Tex.Civ.App. 1964, writ ref., n. r. e.); see *Hohenberg Bros. Co. v. George E. Gibbons and Co.,* 537 S.W.2d 1, 3 (Tex.1976). Section 1 of the contract sued upon in our case provided that deliveries shall begin 15 days after completion of the storage tank. This constituted a condition precedent (to liability under the contract) that must be specifically denied under Rule 54.

Appellant questions the applicability of Rule 54 in a venue case, arguing that the following language in Rule 86 is controlling:

"When a plea of privilege is filed in accordance with this rule, it shall be prima facie proof of the defendant's right to change of venue; provided that such plea shall not constitute a denial under oath of any allegations of plaintiff's petition required to be denied under oath by Rule 93 unless specifically alleged in such plea . . . ."

This issue was addressed in *State Farm County Mutual Ins. Co. v. Landers,* 520 S.W.2d 604 (Tex.Civ.App.1975, no writ), a case that involved recovery on uninsured motorist coverage in an insurance policy. The court held that the giving of notice to the police within 24 hours was a condition precedent to recovery but that the defendant's failure to specifically deny under Rule 54 that the condition had been performed relieved the plaintiff of any burden to prove performance in a venue hearing. 520 S.W.2d at 606. This is clearly the rule in a trial on the merits. *Dairyland County Mutual Ins. Co. v. Roman,* 498 S.W.2d 154, 158 (Tex.1973). No greater burden is placed on the plaintiff to plea and prove a cause of action in a venue trial than in a trial on the merits. *Flowers v. Dempsey-Tegeler & Co.,* 472 S.W.2d 112, 116 (Tex.1971).

Appellant's third point of error asserts that there was no evidence that appellee had sustained legal injury and thus no evidence of this element of its cause of action. Appellee must prove that it sustained damages from appellant's breach of contract, but the precise extent of those damages need not be shown until the trial on the merits. *Cockburn v. Dixon,* 152 Tex. 572, 261 S.W.2d 689, 691 (1953); *Vicki Indus., Inc. v. Hupp Systems, Inc.,* 521 S.W.2d 733, 735 (Tex.Civ.App.1975, no writ). Although Cockburn involved a fraud action, the Supreme Court looked to the statutory measure of damages for fraud to determine whether the plaintiff had sustained injury.

As to damages in our case:

"[T]he measure of damages for [the] nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the

breach and the contract price . . ." Tex.Bus. & Comm.Code § 2.713(a).

§ 2.712(c) states that the failure of the buyer to effect cover within this section does not bar him from ,any other remedy. Fourticq testified that the market price at the time his company learned of the breach was $2.30 per barrel higher than the price under the contract and that UPI's business was buying petroleum products from refiners and selling them to distributors and utility companies. This evidence was legally sufficient to support the trial court's presumed finding that UPI sustained damages from La Jet's repudiation of the contract.

■ The defendant introduced in evidence exhibit D–1, an instrument dated the same day as exhibit P–1, April 16, 1973. It is called "Sales Acknowledgment No. 1112." Like exhibit P–1, it is on stationery of La Jet, is signed by the presidents of both parties to the suit, and almost all of its details, such as the $200,000 letter of credit, the quantity and the price to be paid for the No. 5 fuel oil to be sold, parallel those of exhibit P–1. It does not mention, however, the provision in Section 11 of P–1 concerning the construction of a tank by UPI at La Jet's facility. This significant provision appears in exhibit D–1: "DELIVERY TIME From date of acceptance and week to week thereafter until cancelled by either party giving the other party written notice." Item 1 of the contract sued upon, exhibit P–1, provides:

"(1) Term: Fuel Oil deliveries hereunder shall begin fifteen (15) days after completion of construction of the storage tank mentioned in Section 11 hereof and shall continue until March 1, 1976. Thereafter, this agreement shall continue in full force and effect from month to month unless and until cancelled by either party hereto giving the other party hereto thirty (30) days prior written notice of such cancellation."

Mr. Fourticq, president of UPI, testified that the sales acknowledgment agreement, exhibit D–1, was signed later on April 16, 1973 than was exhibit P–1, the contract sued upon. His explanation was that "the complete contract (P–1) was first, and La Jet was having internal problems involving the title to the land to put the tank on, and this document (D–1) was brought in as an interim at their request . . ."

Oil was delivered by La Jet to UPI for about three months after April 16, 1973.

We hold that the defendant's proof concerning exhibit D–1 constituted an affirmative defense.

"At the venue hearing there is no occasion to examine affirmative defenses to the plaintiff's claim, except so far as they may be inseparably involved in determining a venue fact . . ." 1 McDonald, Texas Civil Practice 614, Venue § 4.55 (1965).

"The sole issue in the plea of privilege hearing is that of venue; not liability or the merits of the case. *Stockyards National Bank v. Maples,* 127 Tex. 633, 95 S.W.2d 1300, 1304; *Farmers Seed & Gin Co. v. Brooks,* 125 Tex. 234, 81 S.W.2d 675. The defense is not available on the hearing to defeat venue in the county of suit. Negativing the prima facie cause of action established by plaintiff does not negative the 'venue fact.' It simply does not affect venue." *Dealers National Insurance Co. v. Rose,* 396 S.W.2d 535 (Tex.Civ.App.1965, no writ), cited with approval in *General Motors Acceptance Corp. v. Howard,* 487 S.W.2d 708 (Tex.1972).

■ Even if the defendant's proof concerning the sales acknowledgment (exhibit D–1) may have properly been considered by the trial judge, it has not been shown that he erred. No findings of fact or conclusions of law were made by the trial judge.

Sometimes a "second contract deals with the same subject matter as did the first contract made by the same parties, but does not state whether or to what extent it is intended to operate in discharge or substitution. The two contracts must be interpreted together. In so far as they are inconsistent, the later one prevails; the remainder of the first contract, being quite consistent with the second in substance and

in purpose may be enforced." 6 Corbin on Contracts 198, Substituted Contract—Novation § 1293 (1962).

The trial judge was entitled to conclude from the evidence that at least one week's notice of cancellation would be reasonable and that the plaintiff had thus established a cause of action against the defendant.

Affirmed.